IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL dePARRIE and
JAMES WEBBER,                                        CV. 06-117-PK
                    Plaintiffs,
                                                     FINDINGS AND
                                                     RECOMMENDATION/ORDER

v.


PORTLAND-GUADALAJARA
SISTER CITY ASSOCIATION,
SHELLEY ROMERO, BRAVO EVENT
SERVICES, INC., CHICO SALAS, and
ROMAN HERNANDEZ,
                    Defendants.
_____

PAPAK, Magistrate Judge:

        Plaintiffs bring these claims against defendants for actions occurring on May 5, 6 and 7,

2004, at the Cinco de Mayo Festival at Waterfront Park in Portland, Oregon.  Plaintiffs'

complaint alleges violations of 42 U.S.C. § 1983, 42 U.S.C. § 2000a et seq., and ORS §

659A.400 et seq.  Defendant Hernandez filed his motion to dismiss plaintiffs' first amended

Page 1 - FINDINGS AND RECOMMENDATION

complaint on March 31, 2006.  Oral argument was held on May 30, 2006.  Plaintiffs' motion for leave to file an amended complaint (No. 12) is granted.  Accordingly, Hernandez's motion to dismiss will be measured against the allegations of the second amended complaint (No. 14). For the reasons set forth below, this court recommends granting Hernandez's motion in part and denying it in part.

FACTS

The Defendant Portland-Guadalajara Sister City Association (PGSCA) is a non-profit corporation and was licensed by the City of Portland, Oregon, to operate the Cinco de Mayo Festival ("Festival") at Waterfront Park ("Park") on May 5, 6, and 7, 2004.  The Park is owned by the City of Portland.  On May 5, 2004, plaintiff Paul deParrie ("deParrie"),[1] Danny Howe ("Howe"), Howe's wife, and the Howes' infant daughter attended the Festival.   Howe, his wife, and deParrie's purpose in attending the festival was to proselytize Christianity to the Festival attendees.

To further this purpose, Howe wore a sandwich board sign reading, "Can you escape the wrath of God?  Matthew 23:33" on the front and "The Blood of Jesus Christ Cleanses from All Sin" on the back.  This was the only sign carried into the park, and the group did not distribute any literature.  Shortly after they entered the Park, Portland Police officers ("Police") and Bravo security personnel ("Security") informed Howe that he was not allowed to wear the sandwich board sign while attending the Festival.  Howe claimed that wearing the sign was an exercise of his First Amendment rights based upon an injunction issued by Judge Ancer Haggerty in

---

[1]Plaintiff deParrie has since passed away.  The personal representatives of deParrie will be substituted for the decedent for the remainder of the litigation.

Page 2 - FINDINGS AND RECOMMENDATION

Gathright v. City of Portland, 315 F. Supp. 2d (D. Or. 2004) ("Injunction").  In response to his refusal to remove the sign, the Police and Security escorted Howe out of the Park.

deParrie continued speaking with the Police inside the Park about Howe's right to wear the sign pursuant to the aforementioned injunction.  The Police eventually allowed Howe back into the Park, but shortly thereafter Security, including Defendant Chico Salas ("Salas"), demanded the party leave the Park immediately.  At this time, a copy of the Injunction was given to Salas, who in turn gave it to the president of the PGSCA, Shelley Romero ("Romero"), and PGSCA's attorney, Defendant Roman Hernandez ("Hernandez").  Hernandez advised Romero that the injunction did not apply to the Festival and the PGSCA was free to make reasonable rules governing free speech at the Festival.  Based on this advice, Romero and Salas demanded that the group leave the park.  According to deParrie, Salas took his arm and pushed him toward the exit before deParrie decided to leave.

On May 6, 2004, deParrie and Howe returned to the Festival, and James Webber ("Webber") accompanied them.  Again, their purpose was to proselytize Christianity to the Festival attendees.  Howe wore his sandwich board sign and was refused admission unless he removed the sign.  He removed his sign and entered the Festival wearing a shirt with a religious message on it.  Webber also entered the festival wearing a shirt and a hat with religious messages written on them.  deParrie was not wearing any garment displaying a religious message.  Upon entry, Security informed the three men that they would be allowed to remain if they did not carry signs or distribute literature.

Howe began loudly preaching the Bible in an area of the park in which there were only portable toilets and no concession stands.  Security, Salas, and Romero came to the area and

demanded that all three men leave and claimed the Injunction was invalid.  Security, Salas, and Romero eventually left, allowing the group to remain at the Festival.  According to the plaintiffs, Howe had resumed preaching when Security and Salas had the volume of amplified speakers at a nearby stage turned up.  Plaintiffs' group changed locations, but had further negative encounters with Security.  Subsequently, the group left the Festival.

On May 7, 2004, Webber and deParrie returned to the Park to attend the Festival. Webber wore a shirt and a hat with a religious message.  Webber and deParrie were refused entrance tickets.  Salas soon arrived at the ticket booth and told Webber and deParrie they would not be allowed into the event.  Webber and deParrie went to the Portland Police Bureau temporary station for assistance.  The plaintiffs allege they were told by Sgt. Myer that PGSCA and Security claimed they had a right, according to Hernandez, to refuse entrance to people based on their clothing.  Webber and deParrie were not allowed into the Festival that day.

LEGAL STANDARD

Defendant Hernandez moves to dismiss the claims against him for failure to state claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  To succeed upon a motion to dismiss, it must be shown beyond a doubt that the plaintiff can prove no set of facts entitling him to relief.  Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999); Craig v. U.S. Bancorp, No. No. 03-1680-AA, 2004 U.S. Dist. LEXIS 6987, at *3 (D. Or. Apr. 14, 2004).  The court must take all facts alleged in plaintiffs' complaint as true, and must resolve all doubts in favor of the nonmoving party.  Lee v. County of Los Angeles, 240 F.3d 754, 764 (9th Cir. 2001); Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248 (9th Cir. 1997).

////

Page 4 - FINDINGS AND RECOMMENDATION

ANALYSIS

deParrie and Webber each bring eight claims for relief against Hernandez based upon alleged violations of their First Amendment freedoms of expression and religious practice pursuant to 42 U.S.C. § 1983, their Constitutional right to free access to and use of public accommodations pursuant to 42 U.S.C § 2000a et seq., and the Oregon Constitutional right to free access and use of public accommodations pursuant to ORS § 659A.400.  Because deParrie and Webber have claimed that separate violations of each law occurred on May 5, 2004, and again on May 6 and 7, 2004, the claims will be analyzed separately.

It should be noted at the outset that Webber's four claims for violations of his various rights occurring on May 5, 2004, must be dismissed because Webber lacks standing in that he was not present at the park that day and could not have suffered an injury in fact, as is required for standing.  Presidio Golf Club v. National Park Serv., 155 F.3d 1153, 1157 (9th Cir. 1998).  At oral argument, plaintiffs' counsel argued that Webber was not bringing a claim that was susceptible to a standing challenge, but his pleadings suggest otherwise.  Hernandez's motion to dismiss should be granted as to Webber's claims based upon alleged violations occurring on May 5, 2004.

I.      42 U.S.C.  §1983

deParrie and Webber allege that when Hernandez advised PGSCA, Security, Romero, and Salas on May 6 and 7, 2004, that it was legal to exclude the Plaintiffs from the Festival, he violated their First Amendment rights to freedom of expression and freedom of religious practice pursuant to 42 U.S.C. § 1983.  deParrie alleges a separate violation of these rights due to Hernandez's identical advice on May 5, 2004.

Page 5 - FINDINGS AND RECOMMENDATION

Under section 1983, it is a violation of federal law for any person to deprive another of his Constitutional rights while acting under color of state law.  Briley v. California, 564 F.2d 849, 853 (9th Cir. 1977).  Because the standard of review for a motion to dismiss is not an onerous one and it requires only that some plausible set of facts could support the above claims, the plaintiffs here need only show that Hernandez could have acted under state law to violate their Constitutional rights under certain circumstances.

Although it is hardly a model of clarity, the complaint does provide this by pointing to the permit issued by the City of Portland to defendant PGSCA.  The plaintiffs argue that PGSCA was a state actor because it was liscensed by Portland City Ordinance, PCC § 20.04.010(G)(3) to be a permittee and/or representative of the City of Portland, "endowed by the State with powers or functions governmental in nature."  Lee v. Katz, 276 F3d 550, 554-555 (9th Cir 2002).  Construing the complaint liberally in favor of the plaintiffs as we must, this court finds the plaintiffs have alleged sufficient facts to establish the possibility that PGSCA was a state actor.  While plaintiffs advance this same argument with respect to Hernandez, individually as a state actor, the record simply does not support this argument, even construing the facts favorably for the plaintiffs.

It is possible, however, that Hernandez became a state actor when he assisted another state actor, PGSCA, in the alleged deprivation of the plaintiffs' rights.  We liberally read the complaint to allege that in advising PGSCA that it was free to exclude deParrie and Webber from the Festival and the Park, Hernandez acted in concert with a state actor, and thus himself acted under color of state law to violate the plaintiffs' rights to freedom of expression and freedom of religious practice.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 149 (1970)

Page 6 - FINDINGS AND RECOMMENDATION

(explaining that the plaintiff is entitled to relief under 1983 if she can show that an employee of the defendant acted in concert with a state actor to deprive her of her rights); Rivera v. ACLU, No. CV-02-894-ST, 2002 U.S. Dist. LEXIS 25570, at *6 (D. Or. Oct. 7, 2002) (holding that a plaintiff states a 1983 claim against a private entity if he can show "facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act").  Taking these allegations to be true, as we must in a motion to dismiss, deParrie and Webber have raised a set of facts in which Hernandez may have been a state actor and they could be entitled to relief in their § 1983 claims against him.[2]

Hernandez argues that even if it is plausible that he was a state actor and deprived the plaintiffs of their Constitutional rights, he is nonetheless entitled to qualified immunity.  As a defense for liability, "qualified immunity shields government officials performing discretionary functions from liability, unless the official's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  Henson v. Florez, No. 92-15771, 1993 U.S. App. LEXIS 29448, at *2 (9th Cir. Oct. 8, 1993).  However, it is unlikely that Hernandez can raise a successful qualified immunity defense because he is not a government official.  In any event, this issue cannot be resolved on the current record and can be raised by Hernandez in a motion for summary judgement at the conclusion of discovery.

Because plaintiffs have raised a plausible set of facts under which their § 1983 claims against Hernandez could succeed and Hernandez has raised no valid defense against the

_____

[2]It bears repetition that this court has not made a ruling on whether any defendant in this case is in fact a state actor.  We simply find that the plaintiffs have shown, sufficient to meet the low standard of proof required to survive a motion to dismiss, that the possibility exists that PGSCA and Hernandez were state actors.

plaintiffs' allegations, the motion to dismiss the remaining § 1983 claims is denied.  The

remaining claims include deParrie's § 1983 claims for May 5, 2004, and May 6 and 7, 2004, and

Webber's § 1983 claims for May 6 and 7, 2004.

II.      42 U.S.C. § 2000a-6(b) and ORS § 659A.400 <u>et seq.</u>

deParrie argues that Hernandez's advice to PGSCA, Security and Romero also violated

his right to free access to and use of public accommodations based on his religion in violation of

42 U.S.C. § 2000a <u>et seq.</u> on May 5, 2004, and May 6 and 7, 2004.  Webber alleges Hernandez's

advice caused the same violation of his rights on May 5, 2004, and May 6 and 7, 2004.  Plaintiffs

allege a violation of the same rights under the Oregon Public Accommodations Act, ORS §

659A.400 <u>et seq.</u>  The Oregon law is analyzed using the same standard as its federal counterpart.

<u>Williams v. Thant Co.</u>, No. 02-1214-MO, 2004 U.S. Dist. LEXIS 12100, at *5 (D. Or. June 22,

2004).

As noted above, Webber's claims for actions occurring on May 5, 2004, should be

dismissed for lack of standing because Webber was not present at the Festival on that day.

Hernandez contends that plaintiffs' claims must be dismissed because in their first

amended complaint, plaintiffs' request monetary damages which is not an available remedy for

violations of these federal and state laws. Plaintiffs have been given leave to file a second

amended complaint, and plaintiffs now request injunctive relief in addition to damages.

Section 42 U.S.C. § 2000a-6(b) does not proved a damages remedy.  <u>Adickes</u>, 398 U.S.

144, 152.  "Substantive rights to public accommodations defined in [42 USC §§ 2000a and

2000a-1] are to be enforced exclusively by injunction."  <u>United States v. Johnson</u>, 390 U.S. 563,

567 (1968).  While this court can not grant injunctive relief for actions which occurred at the

Cinco de Mayo Festival in 2004, this does not mean that the claims are moot. An exception to the mootness doctrine exists in situations "capable of repetition, yet evading review." Two elements must be met in order to invoke the exception, "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Lee v. Schmidt-Wenzel, 766 F.2d 1387, 1390 (9th Cir. 1985) (quoting Trustees for Alaska v. Environmental Protection Agency, 794 F.2d 549, 555 (9th Cir. 1984)).

With respect to the first element, it is clear that the alleged violations occurred during the course of a three-day annual festival and that such a time frame is too short to provide an opportunity for litigation. Further, recognizing the low threshold a plaintiff must meet in a motion to dismiss, this court concludes that the plaintiffs have alleged sufficient facts to establish the possibility that plaintiff Webber and representatives from deParrie's estate will try to attend future Cinco de Mayo Festivals and be denied admission based on the actions taken at the Festival in 2004. Taking every reasonable inference in favor of the plaintiffs, we find that injunctive relief is an available remedy for plaintiffs and that their claims as to § 2000a and Oregon law should not be dismissed.

///

///

///

///

///

////

Page 9 - FINDINGS AND RECOMMENDATION

CONCLUSION

For the foregoing reasons, this court recommends granting defendant Hernandez's motion to dismiss as to plaintiff Webber's § 1983, § 2000a and state law claims for actions occurring on May 5, 2004, and denying defendant Hernandez's motion to dismiss as to all other claims. Plaintiffs' motion for leave to file a second amended complaint (No. 12) is granted.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 13, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 28th day of June, 2006.

    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge